**AUM**

Auburn University Montgomery

School of Sciences
*Office of the Dean*

February 7, 2005

Ms. Debra Foster
Auburn University Montgomery
Director of Human Resources/Affirmative Action
P. O. Box 244023
Montgomery, Alabama   36124-4023

Dear Ms. Foster:

I am in receipt of your letter to me regarding my complaint that was requested by Dr. Ritvo concerning Dr. Mahaffy and forwarded to you. I appreciate the fact that you did, this time, conduct an investigation and have taken "appropriate and effective remedial action." I, however, would like to point out the following:

1.  On Friday, February 4, 2005, Dr. Lawal shared with me the correspondence that was sent to Chris. I find it unusual that Chris has until the end of the month to decide what he will do, and then not have to do it until the end of the Summer. In the mean time, I sit in a cold and hostile work environment wondering every time the door opens whether it will be Chris and what will happen. I find myself looking over my shoulder whenever I am moving around campus or going to the ladies room and my car. Yes, Chris is not suppose to retaliate "against those you know or suspect may have been involved in this complaint or in the investigation of this complaint," – Debra, you told me directly in your office that you told Chris I was the complainant but did not include Dr. Lawal, I find this unsettling and believe Chris will use it to my detriment; especially given the fact that you also told me that Chris said "blacks should not be in responsible positions," and that Chris was to have no contact with me.

    I shared the following incidents in the meeting with Dr. Lawal, Dr. Ritvo, and Ms. Faye Ward on Monday, January 31, 2005: (1) After Dr. Ritvo and Faye met with Chris he came to the dean's office suite and came directly to my work area, looked and said nothing to the two students who were there – lucky for me that Bayo insisted I go to lunch with him. I understand this was at your request. Who do you suppose Chris was looking for? (2) On January 18, 2005 while sitting at my desk, Chris appears standing behind me in an overcoat and hat – saying nothing. I asked if I could help him and he starred at me for a moment and then asked for the dean. I also shared with Dr. Ritvo who stated that this was not a racial issue that indeed it was, given the fact that Chris said "blacks should not be in responsible positions" - As I stated to Dr. Ritvo you can't get more responsible than being the dean of one of the largest Schools on campus and my serving as his Senior Administrative Associate.

    I find it strange that I was told that it would be advisable for me to leave campus while they spoke with Chris. Why was I singled out? No one else who was interviewed was asked to leave. What am I suppose to think? How am I suppose to have a normal day at work again?

EXHIBIT 7

2.  By virtue of your having campus police escort you to your vehicle and having campus police stationed outside of the chancellor and vice chancellor offices indicates to me that you think this individual poses a threat. At no time did anyone from campus security or your office offer any such assistance to me. In fact, Dr. Ritvo said it was unfortunate that I find myself in this position, but there was really nothing that could be done. I was told if Chris does something to call campus police – calling campus police after he does something may be too late!

    I asked that I receive a summary of the meeting proceedings. Dr. Ritvo said I would not get a copy. However, Chris received a summary of his meeting. He said the only thing I would get in writing is the two sentence letter I received from you. I explained that I didn't want details about actions that would be taken, just a summary of the meeting. He replied that the only thing he could say was that Chris would not be fired. Honestly, I wasn't really thinking about what would be done to Chris – but my own safety. I believe I have been mistreated again.

3.  The situation with Chris has already had an effect on others in the School as far as their treatment toward me. He has called several faculty members in his department and he has spoken with Glen Ray who shared with me that Chris says he is not happy and this is not the end of this. (See attachment #1)

As I stated in my statement to Dr. Ritvo, I am tired of being uncomfortable in my workspace because I don't know what Chris and now others will do or say. And, I note that this particular situation was reported the beginning of December and now it appears it will go through summer. Dr. Ritvo said Chris has rights – I agree, so do I. But once again it appears to me the University protects the one who is causing harm rather than the one who is receiving harm.

As we all know, retaliation comes in many ways; it is not always blatant. The work conditions I am in have existed for about two years. I did my part in reporting problems when there was a need to do so – with no results. All too often no one believes or if they do, they "don't recall." I suppose this is the point at which I take the advice of the Human Resource Director/EEOC Officer and Dr. Ritvo and 'do whatever you have to do." I am no longer willing to subject myself to an environment that is potentially unsafe to me and others around me. Though my future earnings with the University will be cut short, I find I am being forced into retirement. I will make an appointment with Ms. Ward on this issue. I shall discuss other issues with you when I deliver this letter. Thank you for your time.

Sincerely,

*Cynthia Ellison*

Cynthia Ellison


cc: Dr. Lawal
    Ms. Ward
    Dr. Ritvo
    Dr. Nance
    Mr. Lee Armstrong