# McPhillips Shinbaum, L.L.P.

### ATTORNEYS AND COUNSELORS AT LAW
516 SOUTH PERRY STREET
MONTGOMERY, ALABAMA 36104

TELEPHONE (334) 262-1911
TOLL FREE (866) 224-8664
FAX (334) 263-2321

Julian L. McPhillips, Jr.*
Kenneth Shinbaum
Mary Goldthwaite
Karen Sampson Rodgers
Aaron J. Luck
James G. Bodin**
Joseph C. Guillot

Joseph G.L. Marston, III

Of Counsel
  G. William Gill

Mailing Address
Post Office Box 64
Montgomery, Alabama 36101

*Also Admitted
 in New York

**Also Admitted
 in District of Columbia

Office Administrator
Amy Strickland

February 10, 2005

Dean Bayo Lawal
Auburn University of Montgomery
7430 East Drive
Montgomery, Alabama 36124-4034

Dr. Roger Ritvo
Auburn University of Montgomery
School of Sciences
7430 East Drive
Montgomery, Alabama 36124-4034

RE:   Ms. Cynthia Ellison

Dear Dean Lawal and Dr. Ritvo:

    This law firm and I represent Ms. Cynthia Ellison. We have filed today, on her behalf, a charge of race and retaliation discrimination charge with the EEOC against AUM and Mr. Chris Mahaffy.  I have attached a copy hereto for your ready review.

    If you desire to negotiate a resolution to this matter without further litigation, please contact me at the above number within 10 days from your receipt of this letter.  Thank you.

                                    Sincerely,

                                    Julian L. McPhillips, Jr.

JLMcP/as

xc:    Ms. Cynthia Ellison
Enclosure

EXHIBIT
8

8

# McPhillips Shinbaum, L.L.P.

### ATTORNEYS AND COUNSELORS AT LAW
### 516 SOUTH PERRY STREET
### MONTGOMERY, ALABAMA 36104

TELEPHONE (334) 262-1911
TOLL FREE (866) 224-8664
FAX (334) 263-2321

Julian L. McPhillips, Jr.*
Kenneth Shinbaum
Mary Goldthwaite
Karen Sampson Rodgers
Aaron J. Luck
James G. Bodin**
Joseph C. Guillot

Joseph G.L. Marston, III

Of Counsel
G. William Gill

Mailing Address
Post Office Box 64
Montgomery, Alabama 36101

*Also Admitted
in New York

**Also Admitted
in District of Columbia

Office Administrator
Amy Strickland

February 10, 2005

Mr. Donald Burris
District Director
Equal Employment Opportunity Commission
Birmingham District Office
Ridge Park Place
1130 22nd Street South
Suite 2000
Birmingham, Alabama   35203

RE:   Ms. Cynthia Ellison

Dear Mr. Burris:

Enclosed please find an original and three copies of a charge of race and retaliation discrimination which we are filing on behalf of our above-named client. Please file the original and return one copy to us in the enclosed, stamped, self-addressed envelope **with the date of receipt stamped thereon, as well as the charge number.**

Thank you very much.

Sincerely,

Julian L. McPhillips, Jr.

cc:    Ms. Cynthia Ellison

JLMcP:aas

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| [ ]    FEPA | |
| [x ]   EEOC | |

_____ State or local Agency, if any _____ and EEOC

| NAME (indicate Mr., Ms., Mrs.) | HOME TELEPHONE (include area code) |
|---|---|
| Ms. Cynthia Ellison | 334-271-6199 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 1598 Sandstone Court | Montgomery, Alabama 36117 | 10/22/55 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| AUM | 1000 + | 334-244-3000 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| School of Sciences, 7430 East Drive | Montgomery, Alabama 36124-4034 | Montgomery |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| Chris Mahaffey | 334-244-3000 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 7430 East Drive | Montgomery, Al. 36124-4034 | Montgomery |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| [x] RACE   [] COLOR   [] SEX   [] RELIGION   [] AGE<br>[x] RETALIATION   [] NATIONAL ORIGIN   [] DISABILITY   [] OTHER (Specify) | EARLIEST (ADEA/EPA)        LATEST (ALL)<br><br>[X] CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

ATTACHED HERETO AND INCORPORATED HEREIN AS IF FULLY SET OUT.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if i change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>*Cynthia Ellison*<br><br>Date February 10, 2005        Charging Party (Signature) | SIGNATURE OF COMPLAINANT<br><br>*Cynthia Ellison*<br><br>SUBSCRIBED AND SWORN TO BEFORE ME ON THIS DATE<br>(DAY, MONTH, AND YEAR) |

EOC FORM 5 (Test 10/94)

MONTGOMERY COUNTY
STATE OF ALABAMA

## AFFIDAVIT

My name is Cynthia Ellison, and I do swear that the following is true and correct in every particular:

1.    I am a female of African-American decent, and I am of sound mind and body.

2.    For the past twenty years, I have been employed by Auburn University of Montgomery, in the Dean's office of the School of Sciences. My position has been that of Executive Secretary, but the title subsequently was changed to Senior Administrative Associate/Advisor. For over twenty years, I have received excellent evaluations from my job, and never had any reprimands or warnings for disciplinary conduct. I have enjoyed my work advising students and working with the Dean.

3.    Chris Mahaffy, a white male, has been chair of the Physical Science department for the past 4 years. He is of Irish origin, and has made the statement **that he had never seen a black person before he came to the United States of America. He has further commented that black citizens do not seem to be as smart as white citizens in the United States.**

4.    Chris Mahaffy very much wanted to be Dean of the School of Sciences. An initial search was made for a new Dean back in 2002, and he was not selected. A man named Bob Elliot was selected, but he retired after a short period of time, which resulted in a second search beginning. In 2004, Dr.

Bayo Lawal was hired as Dean.

5. Unfortunately, after the first search resulted in Mr. Mahaffy not being selected, he started singling me out as one who had some responsibility in his non-selection, which is not true. Nonetheless, **his secretary, Allison Stevens called me the "n" word**, and Mr. Mahaffy himself made the open statement that **"blacks should not hold responsible positions"**. He made that statement in front of Debra Foster, Director of the Human Resource Department and Affirmative Action Director, and Faye Ward, who is the Asst. Director of Human Resources. Ms. Ward is the one who told me he said it. See copy of my memorandum to Dr. Ritvo dated December 3, 2004 about the statements, attached hereto as Exhibit A.

6. In addition, Associate Dean Glen Ray informed me that **other remarks made by Mahaffy about me were so disparaging and bad, that he "could not repeat them."**

7. Unfortunately, due to Mr. Mahaffy's initial belief that I did not support him for the deanship, and in response to the complaint I filed on December 3, 2004, Mr. Mahaffy targeted me for intense retaliation.

8. I am convinced that Mr. Mahaffy is not stable, given the retaliatory way he has treated me, and given his other behavior in the office. I have complained to every sitting dean in the office about it. In fact, although the retaliation was continuing, AUM's Vice Chancellor's office began an investigation of Chris Mahaffy. Finally, by memorandum dated February 3, 2005 (a copy of which is attached hereto as Exhibit B) AUM itself confirmed what I had been saying

to AUM all along.

9.    Even though Mr. Mahaffy had been warned not to harass me, he continued to walk by my office and give me looks that made me uncomfortable.

10.    Despite AUM's issuance of the February 3, 2005 memorandum instructing Mahaffy to avoid his retaliatory behavior towards me, he has not done so, and instead made me very fearful of what he might do next. I therefore found it necessary to resign under the intense pressure of all this, which I consider to be a "constructive discharge."

11.    Before resigning, I sent a memorandum dated February 7, 2005 to Ms. Debra Foster, Director of HR and Affirmative Action of AUM, setting forth my continued dismay with Mr. Mahaffy. See the same attached hereto as Exhibit C. In addition, on February 9, 2005, I delivered a memorandum to Dr. Lawal, Dean of the School Sciences, stating that "please accept this as my notification to you of my intent to retire. As stated in my letter to Debra Foster, I am no longer willing to subject myself to an environment that is potentially unsafe to me and others around me. The effective date of my retirement will be April 1, 2005. I would also like to discuss with you my plans concerning leave." See copy of said memo attached hereto as Exhibit D.

12.    The reason I made the effective date as April 1, 2005 is that I have enough accumulated leave time that I can use until April 1, 2005, without having to return to work.

13.    As the foregoing affidavit and the attached exhibits reflect, I feel strongly that I have been a victim of race discrimination and unlawful retaliation

discrimination in violation of Title VII, 42 U.S.C. Section 2000 (e). My rights under 42 U.S.C. Section 1981 have also been violated. I have suffered intense mental anguish, and continue to suffer the same.

14.    I have retained the law firm of McPhillips Shinbaum, L.L.P. , and Julian L. McPhillips, Jr. , to represent me in this matter. Any further communications with me should be through Mr. McPhillips or his senior legal assistant Amy Strickland.

_____
Cynthia Ellison

Before me, the undersigned Notary Public, appeared Cynthia Ellison, who, known to me, do swear the foregoing is true and correct in every particular on this _10_ day of February, 2005.

_____
Notary Public

# AUM

Auburn University Montgomery

School of Sciences
*Office of the Dean*

# MEMORANDUM

**TO:**    **Dr. Roger Ritvo, Vice Chancellor for Academic and Student Affairs**

**FROM:**    **Cynthia Ellison**

**DATE:**    **December 3, 2004**

**RE:**    **Requested Statement**

The following represents comments that I would like to submit per your request:

Dr. Mahaffy's behavior toward me has been different since he applied and was not selected for the dean's position. After the first search ended for the dean's position, Chris approached me with negative comments about the committee members. He said that Ruby Jenkins kept him from being selected as dean. He continued to come to me and say that he was not happy with the outcome. He even sent a campus wide email expressing his displeasure with the process. Each time he approached me, I asked him to let it go. He said he thought I had some influence with the committee. Of course, I did not, yet each day he would have something to say to me about the process. I felt as though I was being harassed. I would be sitting at my desk and look up and there's Chris talking about what he could do if he were dean.

His attitude and personality changed. He would make inappropriate comments such as "Do you know I've never seen a black person until I came to the United States?" And, "that some people don't see them as being as smart as others." I asked him if he realized I was black. I told him his comment was out of line. I expressed my concern to Bob Elliott, the former dean.

A few months later an incident arose with me and the Physical Science secretary, Allison Stevens. The proceedings of this incident is on record in Human Resources. As a result of this incident, Chris and the entire Physical Science faculty have treated me differently. Before Allison left, Chris instructed her not to speak to me, but to call him and let him handle all transactions with me, and he also asked Allison to meet with Glen Ray once a week to let him know how I was treating her. Further, when I see his faculty members in the hallway, they do not speak and if I start down the hall they will turn and go another direction. If I make a request for information for the dean's office, it is essentially ignored. I feel their actions have been of a retaliatory nature because of statements made by Chris.

PLAINTIFF'S EXHIBIT
A

P.O. Box 244023 Montgomery, Alabama 36124-4023  •  334.244.3678  Fax 334.244.382

MEMO: Dr. Ritvo
Page 2
December 3, 2004

At the beginning of the second search for dean, Chris found out I had been selected as one of the committee members. Chris asked that I speak with him; he offered to give me an email address that no one would know about to send him information about the transactions of the search committee. I refused and told him this would be inappropriate. He approached me several times before I convinced him that I was not going to compromise the work of the committee. As the search progressed and ended, Chris was very upset that he was not interviewed, not once but twice, and told me repeatedly that he was unhappy. I told him he had to deal with it and let it go. During this time there was a drastic change in his behavior. He repeatedly told me he could not sleep at night and would arrive to the office at 3:00 a.m. and wait for me to get in to talk about his not being dean. I was very uncomfortable with his behavior and demeanor. I expressed my concerns to both Brad Moody and Glen Ray.

During this period Allison Stevens resigned. The Physical Science Department needed to hire a new secretary. He came to me with the applications and asked if I knew any of the candidates. I was acquainted with one person and he asked if he should interview her. I told Chris that this was his choice. He did interview her with the others. He came to me several times during the process, I told him I did not want to get involved. He said that if he hired Barbara, she could speak Spanish and could talk to the doctors in Spain and keep up with the condition of his mother. After he hired Barbara he called me to his office and said to me that the young lady did not get the job because I did not do what I needed to do on the search committee. He made it very clear that I would pay for not helping him. I told him he really needed to get over his not being selected as dean – he then said he would get the others who had served on the committee. He went as far as to tell me that Sue Thomson had asked about the production of lab manuals, but he refused to help her because she was also on the committee.

After Bayo was hired, Chris came to me several times and said that Bayo would have a tough time being dean because he is black and no one will be able to understand him. He also said that we "both being black" would not get the cooperation of the faculty. Shortly after Bayo started in the position of dean, Chris called me to his office; he said he didn't want to come to the dean's office and that it was very important. He made several statements about Bayo. He said Bayo didn't listen to anybody and that I should tell him if he wants to succeed, he should change the way he was doing things. Chris has sent several emails to department heads trying to undermine the authority of the dean's office.

At the request of the dean, I asked a member of the Physical Science department to schedule an appointment with Bayo, and his comment was he didn't have time. To this day, he has not been in to see the dean. I believe this is due to the lack of respect exhibited by their department Chair.

MEMO: Dr. Ritvo
Page 3
December 3, 2004

Just recently, according to Glen Ray, Chris made disparaging remarks about me that he considers so ugly that they cannot be repeated. This has created an almost impossible working environment as it relates to Chris and the Physical Science faculty.

The above is just a few examples of how Chris has changed over the past two years. He has created a hostile work environment for me and the new dean. I am tired of being uncomfortable in my workspace because I don't know what Chris will do or say next because he was not selected as dean.

Thank you for your time.



Auburn University Montgomery

Academic and Student Affairs

# MEMORANDUM

To:    Chris Mahaffy

From:  Roger A. Ritvo
       Vice Chancellor for Academic & Student Affairs

Re:    Meeting Summary

Date:  February 3, 2005

This memorandum serves as a summary of the meeting on January 31, 2005 in my conference room.

ATTENDING: Chris Mahaffy, Roger Ritvo and Faye Ward.

Upon receiving a written complaint of a possible violation of our harassment policy, Senior Director of Human Resources Debra Foster conducted a formal and thorough investigation. Her findings and recommendations were reviewed by appropriate administrators. Our meeting served to present these findings and recommended actions to you, and to communicate to you the institution's decision regarding appropriate actions it would take in response.

We have concluded that the investigation, including taking into account your responses, reveals that your actions have been disruptive of the functioning of the School of Sciences and that some of your comments have violated University Policy. As a result of this finding, the following actions will be taken:

1. Effective at noon on January 31, 2005, you are no longer to serve as Department Chair.

2. You must be sure to conduct yourself in a manner that avoids any retaliation against those you know or suspect may have been involved in this complaint or in the investigation of this complaint.

3. You should refrain from any negative or stereotypical comments related to an individual's race, color, age, national origin, religion, veteran's status, disability or other legally protected characteristic.

4. You have agreed to submit to Human Resources and to me a plan (by the end of February) to complete at least two diversity program activities. There are numerous opportunities and a wide range of options here including but not limited to formal course

PLAINTIFF'S
EXHIBIT

B

P.O. Box 244023 Montgomery, Alabama 36124-4023  •  334.244.3600  Fax 334 24

work at a college or university, professional training programs, structured readings, and private consultations with mentors. I leave it to you to decide what efforts you think may be appropriate.

5. When agreed to, these programs must be completed by the end of summer session 2005.

6. Any documented behaviors that violate items 2 or 3 above, or if you do not successfully complete the plan when we agree on its content will result in further action by the University.

7. We discussed the possibility of submitting your concerns in writing. It is your right to do so.

As you transition to the role of faculty member, please coordinate with the next department chair to help distinguish your personal and professional files from the administrative ones. The files related to the role of department chair should remain in the office.

Either Debra Foster or I shall get back to you once we receive your proposed plan of action.

cc:    Guin A. Nance, Chancellor
       Bayo Lawal, Dean
       Debra Foster, Senior Director of Human Resources

2



**Auburn University Montgomery**

School of Sciences
*Office of the Dean*

February 7, 2005

Ms. Debra Foster
Auburn University Montgomery
Director of Human Resources/Affirmative Action
P. O. Box 244023
Montgomery, Alabama   36124-4023

Dear Ms. Foster:

I am in receipt of your letter to me regarding my complaint that was requested by Dr. Ritvo concerning Dr. Mahaffy and forwarded to you. I appreciate the fact that you did, this time, conduct an investigation and have taken "appropriate and effective remedial action." I, however, would like to point out the following:

1.    On Friday, February 4, 2005, Dr. Lawal shared with me the correspondence that was sent to Chris. I find it unusual that Chris has until the end of the month to decide what he will do, and then not have to do it until the end of the Summer. In the mean time, I sit in a cold and hostile work environment wondering every time the door opens whether it will be Chris and what will happen. I find myself looking over my shoulder whenever I am moving around campus or going to the ladies room and my car. Yes, Chris is not suppose to retaliate "against those you know or suspect may have been involved in this complaint or in the investigation of this complaint," – Debra, you told me directly in your office that you told Chris I was the complainant but did not include Dr. Lawal, I find this unsettling and believe Chris will use it to my detriment; especially given the fact that you also told me that Chris said "blacks should not be in responsible positions," and that Chris was to have no contact with me.

I shared the following incidents in the meeting with Dr. Lawal, Dr. Ritvo, and Ms. Faye Ward on Monday, January 31, 2005: (1) After Dr. Ritvo and Faye met with Chris he came to the dean's office suite and came directly to my work area, looked and said nothing to the two students who were there – lucky for me that Bayo insisted I go to lunch with him. I understand this was at your request. Who do you suppose Chris was looking for?  (2) On January 18, 2005 while sitting at my desk, Chris appears standing behind me in an overcoat and hat – saying nothing. I asked if I could help him and he starred at me for a moment and then asked for the dean. I also shared with Dr. Ritvo who stated that this was not a racial issue that indeed it was, given the fact that Chris said "blacks should not be in responsible positions" - As I stated to Dr. Ritvo you can't get more responsible than being the dean of one of the largest Schools on campus and my serving as his Senior Administrative Associate.

I find it strange that I was told that it would be advisable for me to leave campus while they spoke with Chris. Why was I singled out? No one else who was interviewed was asked to leave. What am I suppose to think? How am I suppose to have a normal day at work again?

PLAINTIFF'S EXHIBIT
C

2.    By virtue of your having campus police escort you to your vehicle and having campus police stationed outside of the chancellor and vice chancellor offices indicates to me that you think this individual poses a threat. At no time did anyone from campus security or your office offer any such assistance to me. In fact, Dr. Ritvo said it was unfortunate that I find myself in this position, but there was really nothing that could be done. I was told if Chris does something to call campus police – calling campus police after he does something may be too late!

I asked that I receive a summary of the meeting proceedings. Dr. Ritvo said I would not get a copy. However, Chris received a summary of his meeting. He said the only thing I would get in writing is the two sentence letter I received from you.    I explained that I didn't want details about actions that would be taken, just a summary of the meeting. He replied that the only thing he could say was that Chris would not be fired. Honestly, I wasn't really thinking about what would be done to Chris – but my own safety. I believe I have been mistreated again.

3.    The situation with Chris has already had an effect on others in the School as far as their treatment toward me. He has called several faculty members in his department and he has spoken with Glen Ray who shared with me that Chris says he is not happy and this is not the end of this. (See attachment #1)

As I stated in my statement to Dr. Ritvo, I am tired of being uncomfortable in my workspace because I don't know what Chris and now others will do or say. And, I note that this particular situation was reported the beginning of December and now it appears it will go through summer. Dr. Ritvo said Chris has rights – I agree, so do I. But once again it appears to me the University protects the one who is causing harm rather than the one who is receiving harm.

As we all know, retaliation comes in many ways; it is not always blatant. The work conditions I am in have existed for about two years.  I did my part in reporting problems when there was a need to do so – with no results.  All too often no one believes or if they do, they "don't recall." I suppose this is the point at which I take the advice of the Human Resource Director/EEOC Officer and Dr. Ritvo and 'do whatever you have to do." I am no longer willing to subject myself to an environment that is potentially unsafe to me and others around me. Though my future earnings with the University will be cut short, I find I am being forced into retirement.  I will make an appointment with Ms. Ward on this issue. I shall discuss other issues with you when I deliver this letter. Thank you for your time.

Sincerely,

*Cynthia Ellison*

Cynthia Ellison

cc:    Dr. Lawal
       Ms. Ward
       Dr. Ritvo
       Dr. Nance
       Mr. Lee Armstrong

# Attachment #1

**Selected Notes to File**

1. On Monday, January 31, 2005, after the meeting with the Physical Sciences faculty/staff, Barbara came to my office and stood looking at me crying. I spoke to her and continued my work. No conversation took place.

2. On Wednesday, February 2, 2005, Gloria McPherson, department head for Justice and Public Safety, called with a complaint about having to move her class to another room because the chemistry lab hoods were running. This has been an on-going problem for years, but yesterday she yelled and cursed at me over the phone saying since there is no one to talk to in PHS now, what can she do, it's not my problem as a department head, in fact, it's not PHS's problem, I want something done about it today. I held the phone away from my ear as she was talking. Two of my student workers could hear her talking to the top of her voice, and the custodian, Alice Gregory, heard some of the things she was saying because she was standing right next to me. I started to say that I would look into the problem and she said she didn't want to hear anything I had to say. (I am the one who schedule room usage). I told her I would have Dr. Lawal call her when he returned. He did, and she came to the office to meet with him. He asked her about our conversation and she said I was screaming at her. I have three witnesses that I did not. Gloria also told Dr. Lawal that she had to move her class. Dr. Lawal interrupted the meeting to ask me to look at the room chart to see what we could do to help her. I asked what class needed to be moved, Gloria replied, "I don't know, I'll have to email you." I then printed a list of classes and asked her to identify the one in question. She said she could not. Gloria left and went down to her office. Her secretary brought up their class schedule with Gloria's instructions for me to "look for the conflicts" Dr. Lawal said it is not your job to do this. He asked that I call Rinda to see what room Gloria moved her class to and assign them that room for the remainder of the semester if it were free. Rinda's response was "Gloria did not hold class last night, she let them go." I told Bayo that people in Sciences are upset – and it is directed at me. He asked that I be patient and try to help them – which I did.

3. At about 4:15 or so on February 2, 2005, a call came to the office from Chris Mahaffy. He spoke with Dr. Lawal for about five minutes. Dr. Lawal said he was asking for the chair's position back and that he would go to diversity classes or do whatever he needed to. I told Dr. Lawal that I thought he should report the incident to the administration, which he did.

4. This morning, February 7, 2005 – with no solicitation, while Rosine Hall was making copies, she came over and said that on Tuesday, February 1, 2005, Chris came to her office to "vent." She said he is upset with me and Bayo and it went on for an hour. Her comment was "he is nuts." I told her that I did not want to comment on the matter, but that I was being very careful. She agreed that I should be.

# AUM

## Auburn University Montgomery

### School of Sciences
#### Office of the Dean

# MEMORANDUM

**TO:**       Dr. Bayo Lawal, Dean, School of Sciences

**FROM:**   Cynthia Ellison, Dean's Office    *Cynthia Ellison*

**DATE:**    February 9, 2005

**RE:**       Retirement

Please accept this as my notification to you of my intent to retire. As I stated in my letter to Debra Foster, I am no longer willing to subject myself to an environment that is potentially unsafe to me and others around me. The effective date of my retirement will be April 1, 2005. I would also like to discuss with you my plans concerning leave.



**PLAINTIFF'S EXHIBIT**

D